**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Shawn Murphy, | ) |
| | ) |
|     Plaintiff, | ) Case No. 1:13-CV-863 |
| | ) |
|   vs. | ) |
| | ) |
| Norfolk Southern Railway Company, | ) |
| | ) |
|     Defendant. | ) |

**O R D E R**

This matter is before the Court on cross-motions for partial summary judgment filed by Defendant Norfolk Southern Railway Company (Doc. No. 40) and Plaintiff Shawn Murphy (Doc. No. 43). For the reasons that follow, Defendant's motion for partial summary judgment is **GRANTED IN PART, DENIED IN PART, AND MOOT IN PART**. Plaintiff's motion for partial summary judgment is not well-taken and is **DENIED.**[1]

I. Background

Plaintiff Shawn Murphy presents claims against his employer, Defendant Norfolk Southern Railway ("Norfolk Southern") for alleged violations of the Federal Railway Safety Act ("FRSA"), 49 U.S.C. § 20109, and the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, et seq. Specifically, Plaintiff alleges that Norfolk Southern violated FRSA by retaliating against him for reporting a work-related injury and that it violated FELA by failing to provide him with a safe work environment. The cross-motions for summary judgment

---

[1]Norfolk Southern also filed a motion to amend nunc pro tunc its motion for partial summary judgment. Doc. No. 49. Norfolk Southern omitted to include a table of contents and a summary of its arguments as the local rules of civil procedure require when a motion exceeds 20 pages in length. The amended motion corrects this deficiency and it is, therefore, granted.

pertain to Plaintiff's claim that Norfolk Southern violated FRSA by retaliating against him for reporting a work-related injury.  Most, if not all, of the material facts of this case are not in dispute.

Norfolk Southern is a rail carrier engaged in interstate commerce.  At the relevant time in this case, Plaintiff was a foreman in Norfolk Southern's maintenance of way department working out of the Reed Yard in Middletown, Ohio.  The maintenance of way department, as the name suggests, is responsible for keeping the train tracks in a safe and operable condition.

On the early evening of July 1, 2012, Plaintiff was called out by the assistant track supervisor, Mike Dillon, to help clear from the track some trees that had been blown down by a recent storm.  Plaintiff was working on one section of the track with a crew consisting of himself, Joe Davis, and Steve Jarman.  Dillon was working with another crew clearing trees at different location.

At around 9:30 p.m., Plaintiff was using a chainsaw to cut up a tree.  He was not wearing protective leg chaps at the time although they were available and he actually had worn them earlier in the evening.  The chainsaw kicked back and struck Plaintiff in the right thigh, causing a significant cut.  Plaintiff was not aware that he had been injured at first, but Davis noticed blood on his pants and decided to take Plaintiff to the hospital for medical treatment.

Rule N of Norfolk Southern's operating procedures requires an employee who is injured on the job to report the injury to his immediate supervisor before he leaves work. The employee is also required to fill out a written report, known as Form 22, about the accident. The supervisor is then supposed to report the injury up through channels on Form

11-131.  Norfolk Southern also uses Form 11-131 to compile accident reports for the Federal Railroad Administration.  In addition to ensuring that the employee receives prompt medical treatment, the purpose of the reporting requirement is so that Norfolk Southern can investigate the cause of the accident, take any necessary corrective or protective action, and to comply with its duty to report accidents to the appropriate federal agencies.  Rule P requires that any tool or piece of equipment involved in a work-related injury be taken out of service until it can be inspected and certified for return to use by the Casualty Claim Department.

Davis used his personal cell phone to call Dillon and report what had happened to Plaintiff.  Plaintiff then spoke to Dillon and asked him not to make any further reports about his accident.  Plaintiff did not want Dillon to make a report because he did not want to be ridiculed by his co-workers for being injured because he was not wearing his chaps.  He also testified that he was concerned that the company would retaliate against him for reporting an injury and that his violation of a safety rule (not wearing chaps) could result in discipline and hurt his chances for a promotion.  Finally, Plaintiff testified that he was concerned that reporting the accident would jeopardize incentives, such as stock bonuses and free meals, that his crew could receive for maintaining an injury-free record.  Dillon agreed not to further report the accident.  Plaintiff needed 36 stitches to close the wound but was able to return to work the next day.  Plaintiff was able to work and continue working without any difficulty or restrictions caused by the injury.

About nine months later, in March 2013, an employee made an anonymous complaint about Plaintiff via email to the Norfolk Southern ethics hotline in Atlanta.  The complaint alleged among other things that Plaintiff had been harassing another employee

and that he had failed to report a work-related injury, specifically, that he had failed to report cutting himself with a chainsaw. Norfolk Southern dispatched Jesse Gearheart, the Chief Engineer of Plaintiff's district, and Terri Kwasny, an EEO officer, to the Middletown yard to investigate the complaint.

Gearheart and Kwasny started their investigation by interviewing everyone on Plaintiff's gang, saving Plaintiff's interview for last. Plaintiff's co-workers, including Joe Davis, all stated to Gearheart that they had heard rumors in the past year of someone injuring himself and not reporting it, but that they had no firsthand knowledge of any such incident. As is relevant here, during his interview, Gearheart's first question to Plaintiff was whether between July 2012 and September 2012 he had cut himself with a chainsaw bad enough to need stitches and not report it. Plaintiff admitted that he had. He also admitted that he was not wearing protective chaps at the time. Upon being re-questioned about the incident after Plaintiff's interview, Davis declined to answer any questions without a union representative present. Gearheart immediately took Plaintiff and Davis out of service pending further investigation into the incident. Plaintiff was taken out of service for failure to report an injury and Davis was taken out of service for failing to answer questions in an investigation.

Norfolk Southern obtained Plaintiff's medical records and confirmed that he had been cut and needed stitches. Davis reconsidered and agreed to cooperate in the investigation. Norfolk Southern presented Plaintiff with a Form 22 to complete, which he did not do until a few days later when a union representative could be present. In the Form 22, Plaintiff stated for the first time that he had notified Dillon that he had cut himself. This was the first time that Norfolk Southern became aware that Dillon knew about the accident

4

too. Norfolk Southern then conducted an investigation into Dillon's conduct the day of the accident.

Norfolk Southern eventually brought Plaintiff up on two charges: 1) conduct unbecoming a Norfolk Southern employee, specifically, encouraging Dillon and Davis to conceal his injury; and 2) improper performance of a duty for failing to maintain situational awareness and for failing to wear personal protective equipment while operating a chain saw. Those charges were later sustained by a Norfolk Southern hearing officer after an evidentiary hearing in which Plaintiff was represented by union representatives and permitted to question witnesses and offer exhibits. Norfolk Southern suspended Plaintiff for one year, retroactive to March 22, 2013 (the date of his removal from service), barred him from exercising his seniority as a foreman for any position, and prohibited him from exercising his seniority for any position in the Middletown district for a period of three years. It should also be noted that Davis received what amounted to a time-served suspension of about 10 days. Norfolk Southern terminated Dillon from his management position as assistant track supervisor. Dillon was able to return to a collective bargaining position, but had to serve a 78-day suspension and was prohibited from exercising his seniority for a foreman position for a period of three years.

In the meantime, in April 2013, Plaintiff filed a retaliation complaint with the Occupational Safety and Health Administration ("OSHA") alleging that Norfolk Southern violated FRSA by retaliating against him for reporting a workplace injury. OSHA completed an independent investigation and in September 2013 issued a decision finding that Plaintiff's report of an injury was not a contributing factor in his suspension. Rather,

5

according to the Secretary of Labor, it was Plaintiff's non-reporting of an injury that led to his suspension. Accordingly, the Secretary dismissed Plaintiff's complaint.

Plaintiff filed this lawsuit in November 2013. As mentioned above, the complaint alleges that Norfolk Southern violated FRSA by retaliating against him for reporting a workplace injury and that it violated FELA by failing to provide him with a safe work environment. Following the close of discovery, the parties filed cross-motions for summary judgment on Plaintiff's FRSA claim which are now ready for disposition.

## II. Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. Analysis

#### A. Federal Railway Safety Act

##### 1. Retaliation

FRSA prohibits a railroad from retaliating against an employee for, among other things, reporting a work-related injury. In relevant part, the Act states:

> A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done . . . to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee[.]

49 U.S.C. § 20109(a)(4).

FRSA also provides a framework, which was borrowed from the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"), for employees to establish a retaliation claim. 49 U.S.C. § 20109(d)(2)(A)(FRSA); 49 U.S.C. § 42121(b)(2)(B)(i)-(ii) (AIR-21). Under this framework, the plaintiff must make a prima facie showing of retaliation by demonstrating by a preponderance of the evidence that: (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action. Consolidated Rail Corp. v. United States Dep't of Labor, 567 Fed. Appx. 334, 337 (6th Cir. 2014). If the plaintiff meets this burden, the employer must prove by clear and convincing evidence that it would have taken the same action against the employee in the absence of the protected activity. Id. The plaintiff's protected activity is a "contributing factor" in the unfavorable personnel action if, alone or in connection with other factors, it tended to affect the outcome of the decision. Id.[2]

---

[2]The parties dispute whether FRSA also requires the plaintiff to prove that the railroad acted with retaliatory intent. Plaintiff, relying on Araujo v. New Jersey Trans. Rail Operations, Inc., 708 F.3d 152 (3rd Cir. 2013), contends that showing retaliatory intent is not required to prove his claim. See id. at 158 ("[A]n employee need not demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor in the personnel action.")(quoting Marano v. Department of Justice, 2 F.3d 1137, 1141 (Fed. Cir. 1993)) (emphasis in original). Norfolk Southern, on the other hand, argues that Plaintiff must show that it acted with retaliatory intent. Norfolk Southern points out that in Consolidated Rail the Sixth Circuit indicated that it would require proof of retaliatory motive in a FRSA retaliation case when it stated in the case before it that the plaintiff had shown that "animus was a contributing factor in Bailey's termination." Consolidated Rail, 567 Fed. Appx. at 338.

Also supporting Norfolk Southern's position is Indiana Mich. Power Co. v. U.S. Dep't of Labor, 278 Fed. Appx. 597 (6th Cir. 2008). Indiana Michigan Power was a

Norfolk Southern argues that it is entitled to summary judgment because Plaintiff failed to report his work-related injury in good faith, and, therefore, did not engage in protected activity. In support of this argument, Norfolk Southern points out that Plaintiff asked Dillon not to escalate the report of his injury, that he asked Davis to keep his injury quiet, that he told the treating staff at the hospital that he injured himself at home instead of at work, that he was not forthcoming about his injury until Gearheart confronted him about it after the anonymous tip, and that he would not complete a Form 22 unless he was with a union representative. According to Norfolk Southern, this is not the behavior of an employee reporting an injury in good faith.

Plaintiff, however, contends that the "good faith" requirement only requires the employee to have a good faith belief that his injury is work-related, a requirement he satisfied in this case because his injury indisputably occurred at work. As to Norfolk

---

whistleblower case under the Energy Reorganization Act, which also employs the AIR-21 burden-shifting framework. Id. at 603. In that case, the Sixth Circuit apparently incorporated a requirement that the plaintiff demonstrate a retaliatory motive when, after setting forth the "contributing factor" element, it stated that the plaintiff could prove a retaliatory motive through circumstantial evidence. Id. at 604. The Ninth Circuit implied a similar conclusion in Coppinger-Martin v. Solis, 627 F.3d 745 (9th Cir. 2010), which was a retaliation case under the Sarbanes-Oxley Act. Id. (stating that the plaintiff need not conclusively establish the employer's retaliatory motive as part of her prima facie case). In Kuduk v. BNSF Ry Co., 768 F.3d 786 (8th Cir. 2014), which was a FRSA case, the Eighth Circuit held that the "contributing factor" a plaintiff must prove is intentional retaliation by the employer because § 20109(a) prohibits an employer from discharging or discriminating against an employee for engaging in protected activity. Id. at 791; see also 49 U.S.C. § 20109(a) ("A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done. . . .") (emphasis added). The Court, however, need not definitively decide this issue in order to resolve the cross-motions for summary judgment.

9

Southern's contention that his alleged attempt to cover up his injury belies his good faith, Plaintiff argues that he did report his injury to his direct supervisor, Dillon, and that it is not his fault that Dillon failed to do his job and progress the report through channels like he was supposed to. Much the same is true for Joe Davis - Plaintiff argues that he had no control over whether Davis disclosed his injury or not. In other words, according to Plaintiff, he is not responsible for Dillon's and Davis's failures to report his injury, even though they did exactly what he asked them to do. Finally, Plaintiff argues that his protected activity was a contributing factor in his suspension because Norfolk Southern could never have disciplined him if he had not reported his injury. Plaintiff, therefore, contends that he is entitled to summary judgment on his FRSA claim.

The Court concludes, however, that there are substantial factual questions as to whether Plaintiff meets the requirement that he reported his injury to Norfolk Southern in good faith. Consequently, neither party is entitled to summary judgment on Plaintiff's FRSA claim.

The evidence supporting Plaintiff's good faith is not overwhelming but is substantial enough to withstand summary judgment. As Plaintiff argues, it is not disputed that his injury was work-related and that he believed it to be so when he completed the Form 22. Additionally, while it takes some chutzpah to make this argument, Plaintiff is correct that he did initially report his injury to Dillon and that no cover-up of his injury would have occurred if Dillon had displayed the firmness necessary to reject his request not to progress the report through channels. Moreover, Gearheart agreed in his deposition that Plaintiff technically complied with Rule N when he reported the injury to Dillon.

On the other hand, substantial evidence supports Norfolk Southern's contention that Plaintiff did not report his injury in good faith. As Norfolk Southern has observed, Plaintiff's overall course of conduct indicates that he did not act in good faith concerning the reporting of his injury. Plaintiff asked both Davis and Dillon to keep quiet about his injury, he lied to the hospital staff about where his injury occurred, he was not forthcoming about being injured at work until Gearheart directly confronted him about the incident, and he arguably only involuntarily completed the Form 22. A reasonable juror could find that Plaintiff did not act in good faith because he successfully concealed his injury until Norfolk Southern learned of it from another source and forced him to report it. In other words, a reasonable juror could find that Plaintiff did not act with "honesty of purpose." [3]

It is not the Court's function to weigh the competing inferences of the record evidence. There is enough evidence on both sides of this necessary element for the Court to conclude that neither party is entitled to summary judgment on Plaintiff's FRSA claim.

---

[3] The parties dispute whether the "good faith" requirement of FRSA means only that the employee must have a good faith belief that his injury is work-related (Plaintiff) or whether it means that the employee must have actually made the injury report itself in good faith (Norfolk Southern). The Court concludes, however, that FRSA incorporates both requirements. For instance, a plaintiff might honestly believe that his injury was work-related and report it, even though the injury was in fact due to another cause. Certainly FRSA would protect an employee from retaliation in that situation. On the other hand, FRSA applies to "the employee's lawful, good faith act done[.]" An employee who had some ulterior motive in reporting an injury, or actually attempted to avoid reporting an injury, as suggested by some of the evidence in this case, would not be acting in good faith. See, e.g., BLACK'S LAW DICTIONARY 693 (6th ed. 1990) ("In common usage, [good faith] is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.") (emphasis added); Franklin v. Kellogg Co., 619 F.3d 604, 614 (6th Cir. 2010) ("In all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used.") (internal brackets omitted).

The Court, therefore, need not decide whether Plaintiff can or has marshaled enough evidence on the remaining elements to grant judgment for or against either party as a matter of law. Accordingly, neither motion for summary judgment on Plaintiff's FRSA retaliation claim is well-taken.

## 2. Interference With Medical Treatment

Plaintiff also claims in his complaint that Norfolk Southern violated FRSA by interfering with his medical treatment. FRSA states that "[a] railroad carrier or person . . . may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment." 49 U.S.C. § 20109(c)(1). FRSA also requires the railroad to promptly arrange the transportation of an injured employee to the nearest hospital for medical treatment if he so requests. Id. Norfolk Southern moves for summary judgment on this claim on the grounds that there is no evidence that it interfered with Plaintiff's medical treatment after his chainsaw injury. Plaintiff did not respond to this argument in his memorandum and apparently has abandoned this claim.

In any event, Norfolk Southern is entitled to summary judgment on Plaintiff's FRSA interference with medical treatment claim. The record shows that Joe Davis promptly took Plaintiff to a hospital after he cut himself with the chainsaw. No one else from Norfolk Southern went to the hospital or otherwise involved themselves in Plaintiff's medical treatment. Indeed, no one from Norfolk Southern could have interfered with medical treatment since no management official except for Dillon was aware of it until the following spring. Plaintiff returned to work the day after the accident and had no further medical complications from his injury.

Accordingly, Norfolk Southern's motion for summary judgment on Plaintiff's FRSA interference claim is well-taken and is **GRANTED.**

### B. Other Issues

Norfolk Southern has also moved for summary judgment on discrete components of Plaintiff's claims for damages under both FRSA and FELA.

First, Norfolk Southern moves for summary judgment on Plaintiff's claim for punitive damages pursuant to FRSA. FRSA provides that a prevailing employee may recover "punitive damages in an amount not to exceed $250,000." 49 U.S.C. § 20109(e)(3). An award of punitive damages may be awarded under FRSA where there has been "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." Cain v. BNSF Rwy Co., ARB Case No. 13-006, 2014 WL 4966163, at *7 (Dep't of Labor Sept. 18, 2014).[4] Norfolk Southern argues that even if Plaintiff proves a FRSA violation at

---

[4]Plaintiff contends that if he proves a FRSA violation, an award of punitive damages is within the complete discretion of the jury and that he is not required to prove that Norfolk Southern engaged in any sort of malicious conduct to recover punitive damages. He argues that since § 20109(3) does not include a specific intent standard, Congress did not intend for FRSA to require plaintiffs to prove that the railroad engaged in reckless or malicious conduct in order to recover punitive damages. The Court doubts, however, that Congress intended to leave an award of punitive damages completely to a jury's unfettered discretion. The two FRSA court cases on punitive damages that the Court was able to find both apparently required the plaintiff to prove that the railroad's conduct was malicious, reckless or reprehensible in order to recover punitive damages. Barati v. Metro-North R.R. Commuter R.R. Co., 939 F. Supp.2d 143, 146-47 (D.Conn. 2013); Wallis v. BNSF Rwy Co., No. C13-40 TSZ, 2014 WL 1648472, at *1 (W.D. Wash. Apr. 23, 2014). Additionally, the Department of Labor has consistently interpreted FRSA to require proof of malicious or reckless conduct by the railroad in order to recover punitive damages. See, e.g., Cain, supra at *7; Petersen v. Union Pac. RR Co., 2011-FRS-00017, at 32-33 (Dep't of Labor Aug. 7, 2013) (collecting cases), available by case number, decision date, or party search at http://www.oalj.dol.gov (visited February 20, 2015). This is at least persuasive authority that FRSA incorporates the traditional requirement that the plaintiff must prove that the defendant acted with malice or with reckless disregard of his rights to recover punitive

13

trial, there is no evidence of egregious employer misconduct which would warrant the imposition of punitive damages.

Plaintiff responds that whether Norfolk Southern acted with the requisite mental state for punitive damages is peculiarly a question within the province of the jury that cannot be decided on summary judgment. There is no bar, however, to granting summary judgment on a punitive damages claim so long as the record warrants it. E.g., Klepper v. First American Bank, 916 F.2d 337, 342-43 (6th Cir. 1990).

Plaintiff also relies on cases where juries awarded punitive damages to FRSA plaintiffs whose punishment was less severe than he received from Norfolk Southern in this case. Plaintiff apparently believes that the severity of the punishment meted out to the employee, without regard to the nature of the railroad's conduct in imposing the discipline, is sufficient, without more, for him to recover punitive damages in this case. In two of the cases cited by Plaintiff, however, the plaintiff was able to adduce evidence of the railroad's egregious conduct. In Barati v. Metro-North R.R. Commuter R.R. Co., 939 F. Supp.2d 143 (D.Conn. 2013), for instance, the railroad failed to train the plaintiff properly, failed to provide adequate lighting, resulting in the injury which he otherwise promptly reported, singled him out for discipline for a safety violation, and terminated him in violation of its written policies and FRA regulations and to discourage employees from reporting injuries in order to keep its injury and lost-workday statistics low. Id. at 146. In Brig v. Port Auth.

---

damages. In re Carter, 553 F.3d 979, 987 (6th Cir. 2009)("[T]he views of an agency charged with applying a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."); 49 U.S.C. § 20109 (d)(1)(designating the Secretary of Labor to enforce FRSA retaliation provisions).

Trans Hudson, No. 12 Civ. 5371, 2014 WL 1318345 (S.D.N.Y. Mar. 28, 2014), the railroad "violated the FRSA by harassing, intimidating, and penalizing the Plaintiffs for reporting an incident in which they were almost struck by a consist."[5] Id. at *1. In Wallis v. BNSF Rwy Co., the railroad never actually moved for summary judgment on the plaintiff's claim for punitive damages, so the fact that the district court withheld the issue for the jury says nothing about whether Norfolk Southern is entitled to summary judgment on Plaintiff's punitive damages claim in this case. See Wallis v. BNSF Rwy Co., Case No. 2:13-CV-040 (W.D. Wash. Dec. 30, 2013), Doc. No. 41. In Almendarez v. BNSF Rwy Co., the railroad did not file a motion for summary judgment at all. See generally Almendarez v. BNSF Rwy Co., Case No. 2:13-CV-86 (W.D.Wash). In short, none of the cases cited by Plaintiff indicate that Norfolk Southern is not entitled to summary judgment on his punitive damages claim.

Plaintiff has not pointed to any material evidence showing that Norfolk Southern disciplined him in reckless or callous disregard of his FRSA rights. He does claim that a jury could award him punitive damages because Norfolk Southern continues to insist that he conspired to conceal his injury when Jess Gearheart admitted that he complied with Rule N by reporting the injury to Dillon. This argument does not save his punitive damages claim from summary judgment, however. Yes, Plaintiff did technically comply with Rule N, but as stated above, there is also substantial evidence, including his own admissions, that he actively sought and obtained Dillon's and Davis's participation in squelching any further

---

[5] A "consist" is a group of coupled vehicles that make up a train. See Train Dictionary, available at http://www.vre.org/service/terminology.htm (visited Feb. 20, 2015).

reporting of his injury through channels.  The term "conspiracy" might be a little melodramatic, but it is not an unreasonable view of the facts on Norfolk Southern's part, and certainly nothing, by itself, to merit the imposition of punitive damages.

Plaintiff has failed to meet his Rule 56 burden to come forward with evidence demonstrating a material issue of fact on his claim for punitive damages.  Accordingly, Norfolk Southern is entitled to summary judgment on this claim.

Second, Norfolk Southern argues that Plaintiff is seeking damages that are not available under FELA.  Plaintiff, on the other hand, recognizes that some damages are available under FRSA, but not FELA, and he states that he is not seeking to recover anything for his FELA claim that FELA does not provide.  In other words, Plaintiff indicates that he only seeking FRSA damages for his FRSA claim and FELA damages for his FELA claim.  With that clarification in mind, this aspect of Norfolk Southern's motion for summary judgment is moot.

Third, Norfolk Southern moves for summary judgment on Plaintiff's FELA claim for back pay, future medical expenses, and damages for future pain and suffering because he conceded that he did not miss any work due to the chainsaw injury and admitted that he does not suffer any lingering effects from the injury.  Plaintiff did not specifically address this argument in his brief but contends broadly that all damages issues should be reserved for the jury.  It was Plaintiff's burden on summary judgment to come forward with evidence demonstrating that he incurred these damages after Norfolk Southern showed there was no genuine issue of fact on these claims.  Roden v. Sowders, 84 Fed. Appx. 611, 613 (6th Cir. 2003).  Plaintiff did not meet his burden; therefore, Norfolk Southern is entitled to

summary judgment on Plaintiff's FELA claim for back pay, future medical expenses, and damages for future pain and suffering.

<u>Conclusion</u>

In conclusion, Defendant's motion for partial summary judgment is **GRANTED IN PART, DENIED IN PART, AND MOOT IN PART.** Plaintiff's motion for partial summary judgment is not well-taken and is **DENIED.** Each party's motion for summary judgment is denied to the extent it seeks judgment on liability under FRSA. Defendant's motion for summary judgment is well-taken and granted on Plaintiff's FRSA claim for punitive damages and on his FELA claim for back pay, future medical expenses, and damages and future pain and suffering. To extent that Defendant contends that Plaintiff is seeking FRSA damages under FELA, or vice versa, the motion is moot.

**IT IS SO ORDERED**

Date March 3, 2015               s/Sandra S. Beckwith
                                 Sandra S. Beckwith
                                 Senior United States District Judge